# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| RANDAL G. JENNINGS, ) | |
| ) | |
| Movant, ) | Civil No. 13-00039-CV-W-DGK |
| ) | Criminal No. 09-00050-01-CR-W-DGK |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## ORDER DENYING MOVANT'S § 2255 MOTION

Pending before the Court is Movant Randal Jennings' ("Movant" or "Jennings") *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 1). The Court has carefully reviewed this motion, the Government's response (Doc. 6), and the Movant's reply (Doc. 10), and for the reasons discussed below, the motion is DENIED.

## Background[1]

On February 5, 2009, a federal grand jury returned an thirteen count indictment charging Jennings with four counts of commercial sex trafficking of a child; two counts of obtaining a child for the production of child pornography; two counts of inducing a child to engage in sexually explicit conduct for the production of child pornography; three counts of transporting a child in interstate commerce for prostitution; and two counts of publishing a notice of images that involved the sexual exploitation of a child, in violation of 18 U.S.C. §§ 1591, 2251, and 2423(a) and (e), respectively (Crim. Doc. 4).

Jennings' indictment charged that from October 1, 2007, to and including, January 29, 2009, in the Western District of Missouri and elsewhere, Randall Jennings knowingly recruited,

---
[1] Much of this background is taken from the Government's brief (Doc. 6).

enticed, harbored, transported, provided, and obtained minors to engage in sex acts for commercial benefit.

On July 16, 2009, Jennings waived his indictment, entered a guilty plea to a negotiated information, and waived his right to a new indictment. Jennings then pled guilty, through a negotiated plea agreement, to a one-count information charging him with commercial sex trafficking of children, in violation of 18 U.S.C. §§ 1591(a), (b)(2), and 1594(a) (Crim. Docs. 30, 31, 32, 33, 36).

On October 6, 2010, the Court imposed a sentence of 262 months' imprisonment, to be followed by a fifteen year term of supervised release term (Crim. Docs. 61, 62, 75). Although Jennings' plea agreement contained a waiver of his right to appeal, on November 19, 2010, Jennings filed a notice of appeal, challenging his sentence (Crim. Doc. 66).

On December 2, 2011, the Eighth Circuit dismissed Jennings' appeal. *United States v. Jennings*, 662 F.3d 988 (8th Cir. 2011). On April 19, 2012, Jennings petitioned the United States Supreme Court for a writ of certiorari, which it denied on May 16, 2012. *Jennings v. United States*, 132 S. Ct. 2407 (2012). On January 4, 2013, Jennings filed a *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Civ. Doc. 1).

**Standard**

I. **Section 2255**

Title 28, section 2255 allows a district court to "vacate, set aside or correct [a] sentence" which "the court was without jurisdiction to impose . . . or . . . was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Movants are entitled to a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." *Id.* at 2255(b).

## II. Issues Not Cognizable under § 2255

"A motion under § 2255 is not a substitute for a direct appeal, and is not the proper way to complain about simple trial errors." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994) (citations omitted). Moreover, where a movant does not bring a claim on direct appeal, he is barred from raising the claim in a § 2255 proceeding unless he can establish cause for the procedural default and actual prejudice or that he is actually innocent. *United States v. Bousley,* 523 U.S. 614, 622 (1998).

## III. Ineffective Assistance of Counsel

The Sixth Amendment right to counsel entitles a criminal defendant to effective assistance of counsel. In *Strickland v. Washington,* the Supreme Court set forth a two-part test for deciding a claim of ineffective assistance of counsel. 466 U.S. 668 (1984). In order to succeed on a claim of ineffective assistance of counsel, a prisoner must first show that

> counsel's performance was deficient . . . [meaning] that counsel made errors so serious the counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense . . . [meaning] that counsel's errors were so serious as to deprive the defendant of a fair trial . . . .

*Id.* at 687. The court need not decide whether counsel's performance was inadequate if it finds that the petitioner was not prejudiced by any claimed deficient performance. *Id.* at 697.

To satisfy the first prong, a movant must show that counsel's performance "fell below an objective standard of reasonableness in that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would use under like circumstances." *United States v. Acty*, 77 F.3d 1054, 1059 (8th Cir. 1996). In deciding whether a counsel's performance was ineffective, a court must consider the totality of circumstances surrounding the counsel's representation. *Strickland*, 466 U.S. at 690. A court "must indulge a strong presumption that

3

counsel's conduct falls within the wide range of reasonable professional assistance." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689).

To satisfy the second prong, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Because the alleged deficient performance involves a plea process, Smith must prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This prejudice inquiry also often involves the court assessing whether correcting the error would have resulted in a different outcome at a subsequent trial. *Hill*, 474 U.S. at 59-60.

## Discussion

### I. Ineffective Assistance of Counsel

Jennings makes two ineffective assistance of counsel claims. First, Jennings alleges that his attorney, Travis Poindexter ("Mr. Poindexter"), was ineffective for failing to call witnesses Jennings wanted to testify on his behalf. Second, Jennings argues that Mr. Poindexter failed to properly represent him throughout his plea negotiations and sentencing.

**A. Jennings' counsel was not ineffective for not calling Jennings' desired witnesses to testify on his behalf.**

Jennings alleges that Mr. Poindexter was ineffective for failing to call certain witnesses on his behalf. Specifically, Jennings alleges that he requested the following individuals be called for the following stated reasons: (1) an adult female who would testify "that the women were doing [their] own ads and I was not doing the actions I was charged with"; (2) Jennings's son, "who would have told them that the statement the prosecutor made to the judge at sentencing was a lie;" (3) his wife; and (4) the custodian of record for his place of employment, that "would

4

have proved I was in another state and could not have did the crime I was charged with" (Civ. Doc. 1).

Mr. Poindexter addresses Jennings' allegations in a sworn affidavit. With regard to the adult female, Mr. Poindexter states that he and his investigator made several attempts to locate the adult female, confirming her address and the fact that she was represented by counsel because of pending criminal charges in Jackson County, Missouri. Mr. Poindexter then determined that:

> If a trial were necessary, a subpoena could have (and most likely would have) been requested. At the pretrial stage, however, [the adult female] had made no negative statements against Mr. Jennings and a request to interview her through counsel, could have resulted in negative consequences for Mr. Jennings (such as a request by [the adult female] to assist the government against Mr. Jennings).

(Civ. Doc. 6, Poindexter's Affidavit). The Court finds Mr. Poindexter's decision not to solicit testimony from a witness who might be detrimental to his client's case was reasonable.

Jennings' allegation that his attorney failed to call Jennings' son as a witness is also without merit. In setting up witnesses to testify on Jennings' behalf, Mr. Poindexter contacted Jennings' son, who was serving in the United States army at the time, and set up an appointment to interview him. Prior to the interview, on May 13, 2009, "Mr. Jennings left a telephone message indicating that he wanted to take his son off of the witness list. Additionally, on May 20, 2009, during a phone conversation, Mr. Jennings reiterated that he did not wish for us to talk to his son" (Civ. Doc. 6, Poindexter's Affidavit). Accordingly, the Court finds that Mr. Poindexter reasonably chose not to call Jennings' son based on his request.

Mr. Poindexter's affidavit also responds to Jennings' claim that he failed to call Jennings' wife as a witness, noting that at the time Jennings was charged, he and his wife had begun

divorce proceedings. Given that Jennings and his wife were separated, it was not unreasonable for Mr. Poindexter to not call her to testify on Jennings' behalf.

Finally, Mr. Poindexter's affidavit addresses Jennings' desire to call as a witness his employer, stating that Jennings' work records could not have negated any element of his arrest during an undercover sting operation and, therefore, would have been futile. This was a reasonable decision.

Accordingly, the Court finds that Mr. Poindexter's decisions not to call certain witnesses were reasonable litigation strategies. "[A] reasoned decision not to call a witness is a virtually unchallengeable decision of trial strategy, in part because there is a considerable risk inherent in calling any witness because if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences." *Rodela-Aguilar*, 596 F.3d at 464 (internal quotation marks omitted). Additionally, Jennings' failure to provide affidavits delineating the expected testimony of any of his alleged exculpatory witnesses is fatal to his ineffective assistance of counsel claim. *See Armstrong v. Kemna*, 534 F.3d 857, 867-68 (8th Cir. 2008) (quoting *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007)) ("Ordinarily, a defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony . . . would be fatal to an ineffective assistance of counsel claim."). Purported testimony that is merely of hypothetical or remote benefit to the defense is insufficient to prove actual prejudice under *Strickland*. *Caban v. United States*, 281 F.3d 778, 786 (8th Cir. 2002).

**B. Jennings' counsel was not ineffective during his plea negotiations and sentencing.**

Jennings' next allegation is that Mr. Poindexter failed to properly represent him throughout his plea negotiations and sentencing by not conducting a proper fact investigation, by failing to raise necessary objections, and by erroneously advising him to plead guilty rather than

proceed to trial. Contrary to Jennings' allegations, the record demonstrates that Mr. Poindexter properly represented Jennings throughout the process.

First, Jennings claims that Mr. Poindexter failed to properly research the charges in the case. Specifically, Jennings alleges that he should have been charged under 18 U.S.C. §§ 2421 and 2422, sex trafficking, rather than being charged under 18 U.S.C. § 1591, sex trafficking of children, because his actions lacked the element of coercion. Because of this alleged mistake, Jennings argues that he was subject to a sentence with a minimum of ten years, rather than a maximum of ten years as prescribed by 18 U.S.C. § 2421.

Jennings improperly interprets the law. Title 18, section 1591 does not require that the offense be effected by means of force, fraud, or coercion. "Because the victims were minors and could not legally consent, the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims. Instead, the government was only required to prove [Defendant] knowingly recruited, enticed, harbored, transported, provided, or obtained a minor, knowing the minor would be caused to engage in commercial sex acts. *United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009). Accordingly, Jennings was properly charged. Moreover, as Mr. Poindexter states in his affidavit, he fully explained the possible sentences that Jennings could face either by pleading guilty or proceeding to trial.

Jennings also alleges that Mr. Poindexter failed to investigate whether the government was funding women's shelters, giving shelters the incentive to fabricate human trafficking cases. However, the Court already ruled that this information was irrelevant and would have no influence on a jury (Crim. Doc. 47).

Next, Jennings alleges that Mr. Poindexter overlooked mistakes in the Presentence Investigation Report ("PSI"), including the computation that Jennings was subject to fifteen

7

years' imprisonment, rather than the ten years to which the parties had agreed. Mr. Poindexter responded in his affidavit:

> The preliminary PSI recommended that Mr. Jennings should be subject to a 15 year mandatory minimum sentence as opposed to the 10 year mandatory minimum to which he pleaded. As a result of this suggestion, on January 8, 2010, I filed a Motion to Withdraw the guilty Plea because Mr. Jennings was only advised of a 10 year mandatory minimum per the written agreement and plea proceeding by the Court. (Doc. 37.) The Government agreed that the 10 year mandatory minimum was applicable but that if the Court determined it were a 15 year mandatory minimum then Mr. Jennings should be allowed to withdraw his plea. (Doc. 42.) After review the pleadings, the Court agreed that [a] 10 year minimum was applicable. (Doc. 43.)

(Civ. Doc. 6, Poindexter's Affidavit).

Jennings' allegations that Mr. Poindexter provided him with ineffective assistance of counsel during his plea agreement and sentencing are not supported by the record. Accordingly, his motion is denied on these grounds.

## II. Prosecutorial Misconduct

Jennings next asserts a claim for prosecutorial misconduct based on the fact that the government (1) stated during sentencing that Jennings' son helped him commit the crime and had sex with one of the victims; (2) withheld information about its financial support of women's shelters; (3) withheld information that its witness was in prison for theft; and (4) violated the double jeopardy clause.

Jennings' claim of prosecutorial misconduct is barred because it should have been raised on direct appeal rather than in a § 2255 motion. "Because habeas relief is an extraordinary remedy which will not be allowed to do service for an appeal, significant barriers exist in the path of a petitioner who seeks to raise an argument collaterally which he failed to raise on direct review." *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley v. United*

*States*, 523 U.S. 614, 621 (1998) (internal quotation marks omitted)). "More specifically, a claim unraised on direct appeal is procedurally defaulted unless a petitioner can demonstrate (1) cause for the default and actual prejudice or (2) actual innocence." *Moss*, 252 F.3d at 1001.

Jennings failed to raise his claims of prosecutorial misconduct on direct appeal, and he did not present any argument in the instant motion concerning a cause for the default or actual prejudice. Therefore, these claims are denied.

### III. Evidentiary Hearing

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id.* (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)); *see also Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003) ("A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.") (internal quotation marks omitted). Because Jennings' allegations are purely legal in nature and can be resolved solely on the basis of the record, he is not entitled to an evidentiary hearing.

### IV. Certificate of Appealability

Jennings can appeal this decision to the Eighth Circuit Court of Appeals only if this Court issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). Because Jennings cannot make a substantial showing of a denial of a constitutional right or raise a debatable issue among

9

reasonable jurists, the Court declines to issue a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## Conclusion

Jennings' claims of ineffective assistance of counsel are without merit, and his claim of prosecutorial misconduct is procedurally barred. Accordingly, his motion is DENIED. A hearing is not warranted because the record conclusively shows that Jennings is not entitled to any relief, and a certificate of appealability shall not issue.

**IT IS SO ORDERED.**

Dated: July 10, 2013                           /s/ Greg Kays  
                                                                             GREG KAYS  
                                                                             UNITED STATES DISTRICT JUDGE